# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| ROBERT BENYAMINI, | No.  2:13-cv-0910 TLN AC P (TEMP) |
|---|---|
| Plaintiff, | |
| v. | FINDINGS & RECOMMENDATIONS |
| S. VANCE, et al., | |
| Defendants. | |

**A.   Introduction**

Plaintiff is a former state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This matter proceeds on plaintiff's first amended complaint, which was found to state claims for interference with and retaliation for plaintiff's exercise of his First Amendment rights. (ECF Nos. 6, 10.)

Now pending before the undersigned is defendants' July 27, 2015, motion for an order declaring plaintiff a vexatious litigant and requiring security in the amount of $20,400.[1]  (ECF No. 20.)  Plaintiff opposes the motion.  For the reasons set forth here, the court will recommend that defendants' motion be granted.

////

---

[1]  Defendants also moved for the imposition of a pre-filing order, but have now withdrawn that request. See Defs.' Reply at 1.

### B.    Procedural History

Plaintiff initiated this action on May 8, 2013, and is proceeding on a first amended complaint that was found to state First Amendment claims against defendants K. Henderson, Roth, and S. Vance, correctional staff at California State Prison—Sacramento ("CSP-Sac").[2] (ECF Nos. 6, 10.)  Specifically, plaintiff alleges that between May 26, 2009, and July 2009 ("the relevant period"), Captain Vance and Sergeant Henderson deprived plaintiff of all of his property, stripped him naked, and placed him into "MOHU"[3] in retaliation for plaintiff's pending lawsuits against multiple staff members.  Plaintiff claims that this conduct caused him to miss court deadlines for filing an amended complaint and service documents.  Plaintiff repeatedly asked Captain Vance, Sgt. Henderson, and Lt. Roth for permission to write to the courts to ask for an extension of time, but each defendant told plaintiff that writing material or legal papers were not allowed in MOHU.  When plaintiff was finally released from MOHU, he claims that the defendants delayed returning his property, causing plaintiff to miss additional deadlines, including in a case against a "Lt. O'Brian."  As a result, plaintiff had two cases dismissed, resulting in the assessment of strikes against plaintiff.

On July 27, 2015, defendants filed the instant motion. (ECF No. 20.)  After obtaining a 90-day extension of time to file an opposition, plaintiff filed an objection on December 10, 2015. (ECF No. 26.)  Defendants filed a reply.  (ECF No. 27.)  This motion is fully briefed and ready for disposition.

### C.    Defendants' Request for Judicial Notice

Defendants ask the court to take judicial notice of the following prior litigation of plaintiff[4]:

    1.    Benyamini v. Johnson, Ninth Circuit Case No. 11-16971 (appeal from E.D. Cal.

---

[2] Plaintiff contends that at all times relevant to this action he was housed at "New Folsom State Prison." CSP–Sac was originally called "New Folsom" and is located next to Folsom State Prison. Plaintiff has now been released from custody.

[3] This term refers to a Mental Health Outpatient Housing Unit. Shields v. Virga, 482 Fed. Appx. 275, 276 (9th Cir. Sept. 5, 2012).

[4] Judicial notice may be taken of court records. Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126 (1981).

2

Case No. 1:07-cv-0907-LJO-DLB). On December 5, 2011, the Ninth Circuit dismissed the appeal for failure to prosecute after holding that the appeal was "frivolous" and directing plaintiff to pay the filing fee. Defs.' Request for Judicial Notice ("RJN"), Ex. A.

    2.    <u>Benyamini v. Johnson</u>, E.D. Cal. Case No. 1:07-cv-0907-LJO-DLB.  Plaintiff was found to state cognizable claims against multiple defendants, but the action was ultimately dismissed on July 27, 2010, for plaintiff's failure to timely submit service documents. RJN, Ex. B.

    3.    <u>Benyamini v. Simpson</u>, E.D. Cal. Case No. 2:08-cv-1552-GEB-DAD.  Case dismissed on July 8, 2009, for failure to state a claim.  RJN, Ex. C.

    4.    <u>Benyamini v. Anderson</u>, E.D. Cal. Case No. 1:07-cv-1596-OWW-GSA.  Plaintiff's complaint was dismissed with leave to amend for failure to state a claim.  When plaintiff failed to file an amended pleading, the case was dismissed on May 13, 2009, on the ground that the only pleading on file failed to state a claim. RJN, Ex. D.

    5.    <u>Benyamini v. Manjuano</u>, E.D. Cal. Case No. 1:06-cv-1096-AWI-GSA.  Plaintiff was found to state an Eighth Amendment claim against multiple Defendants.  On March 4, 2015, judgment was entered for defendants following grant of their motion for summary judgment. RJN, Ex. E.

    6.    <u>Benyamini v. Manjuano</u>, E.D. Cal. Case No. 1:07-cv-1697-AWI-GSA.  Case dismissed on October 7, 2008, as duplicative of 1:06-cv-1096-AWI-GSA. RJN, Ex. F.

    7.    <u>Benyamini v. Rivers</u>, E.D. Cal. Case No. 2:09-cv-0075-JAM-KJM.  Plaintiff's complaint was dismissed with leave to amend for failure to state a claim.  On November 25, 2009, the case was dismissed without prejudice at plaintiff's request.  RJN, Ex. G.

    8.    <u>Benyamini v. Kretch</u>, E.D. Cal. Case No. 2:09-cv-0170-GEB-DAD.  Plaintiff's complaint was dismissed with leave to amend for failure to state a claim.  On August 25, 2009, the case was dismissed for plaintiff's failure to file an amended complaint.  RJN, Ex. H.

    9.    <u>Benyamini v. Sharp</u>, E.D. Cal. Case No. 2:09-cv-0173-FCD-EFB.  Plaintiff's complaint was found to state a claim against one defendant.  Plaintiff was granted leave to file an amended pleading or to submit service documents.  When plaintiff filed neither, the case was

1  dismissed without prejudice on March 16, 2010.  RJN, Ex. I.

2      10.     Benyamini v. Harris, E.D. Cal. Case No. 2:09-cv-2462-MCE-DAD.  Plaintiff's
3  complaint was found to state a claim against multiple defendants.  On September 30, 2010, the
4  case was dismissed for plaintiff's failure to submit service documents.  RJN, Ex. J.

5      11.     Benyamini v. Forsthy, E.D. Cal. Case No. 2:09-cv-2323-GEB-DAD.  Plaintiff's
6  complaint was found to state a claim, but the case was dismissed on June 1, 2012, for failure to
7  submit documents necessary to effect service. RJN, Ex. K.

8      12.     Benyamini v. Forsthy, Ninth Circuit Case No. 12-16402 (appeal from E.D. Cal.
9  Case No. 2:09-cv-2323-GEB-DAD).  Summarily affirmed district court's judgment after finding
10 that the questions raised are "so insubstantial as not to require further argument."  RJN, Ex. L.

11     13.     Benyamini v. Byrd, Ninth Circuit Case No. 11-7218 (appeal from E.D. Cal. Case
12 No. 2:10-cv-0101-KJM-DAD).  Plaintiff's application to proceed in forma pauperis denied
13 because appeal found to be frivolous.  Appeal subsequently dismissed for plaintiff's failure to pay
14 filing fee.  RJN, Ex. M.

15     14.     Benyamini v. Forshythe, E.D. Cal. Case No. 2:09-cv-2453-GEB-EFB.  Plaintiff's
16 complaint was found to state a claim against multiple defendants.  Plaintiff was granted leave to
17 either file an amended complaint or return documents necessary to effect service.  When plaintiff
18 did neither, the case was dismissed on July 13, 2011, for failure to prosecute.  RJN, Ex. N.

19     15.     Benyamini v. Forsythe, Ninth Circuit Case No. 11-16838 (appeal from E.D. Cal.
20 Case No. 2:09-cv-2453-FCD-EFB).  Reviewed and affirmed district court's dismissal of action.
21 RJN, Ex. O.

22     16.     Benyamini v. Colvin, E.D. Cal. Case No. 2:12-cv-03160-JAM-EFB.  Plaintiff's
23 complaint was found to state a claim against one defendant.  Plaintiff was granted leave to either
24 file an amended complaint or return documents necessary to effect service.  When plaintiff did
25 neither, the case was dismissed on November 29, 2012, for failure to prosecute.  RJN, Ex. P.

26     17.     Benyamini v. Mendoza, E.D. Cal. Case No. 2:09-cv-2602-LKK-AC.  Plaintiff's
27 complaint was found to state a claim against multiple defendants.  On motion by defendants,
28 plaintiff's in forma pauperis status was revoked and he was ordered to pay the filing fee in full.

4

1  The case was dismissed on November 27, 2012, for plaintiff's failure to pay the filing fee. RJN,
2  Ex. Q.
3        18.    Benyamini v. Mendoza, Ninth Circuit Case No. 12-16341 (appeal from E.D. Cal.
4  Case No. 2:09-cv-2602-LKK-GGH). Plaintiff's application to proceed in forma pauperis denied
5  because appeal found to be frivolous. Appeal subsequently dismissed for plaintiff's failure to
6  respond to court order. RJN, Ex. R.
7        19.    Benyamini v. Mennom, E.D. Cal. Case No. 2:11-cv-2916-GEB-EFB. Plaintiff's
8  complaint was dismissed with leave to amend for failure to state a claim. When plaintiff failed to
9  file an amended complaint, the case was dismissed on August 1, 2012, for failure to comply with
10 a court order. RJN, Ex. S.
11       20.    Benyamini v. Sahoota, Ninth Circuit Case No. 12-16863 (appeal from E.D. Cal.
12 Case No. 2:11-cv-2916-GEB-EFB). Reviewed and affirmed district court's dismissal of action.
13 RJN, Ex. T.
14       21.    Benyamini v. Wolfe, E.D. Cal. Case No. 2:12-cv-1578-WBS-CKD. Plaintiff's
15 complaint was found to state a claim against multiple defendants. On motion by defendants,
16 plaintiff's in forma pauperis status was revoked and he was ordered to pay the filing fee in full.
17 The case was dismissed on March 6, 2014, for plaintiff's failure to pay the filing fee. RJN, Ex. U.
18       22.    In re Robert P. Benyamini, Ninth Circuit Case No. 12-80209 (appeal from E.D.
19 Cal. Case No. 2:12-cv-3008-WBS). Pursuant to a pre-filing review order, plaintiff's appeal was
20 not allowed to proceed because "the appeal is so insubstantial as to not warrant further review."
21 RJN, Ex. V.
22       23.    Benyamini v. Mayfield, E.D. Cal. Case No. 2:11-cv-0659-WBS-KJN. Case
23 dismissed on July 11, 2011, for failure to pay filing fee and/or submit an application to proceed in
24 forma pauperis. RJN, Ex. W.
25 **D.    Discussion**
26       Pursuant to this court's Local Rule 151(b), "[t]he provisions of Title 3A, part 2, of the
27 California Code of Civil Procedure, relating to vexatious litigants, are hereby adopted as a
28 procedural Rule of this Court on the basis of which the Court may order the giving of a security,

5

bond, or undertaking, although the power of the Court shall not be limited thereby." A defendant's motion for an order requiring a plaintiff to furnish security must be supported by a showing (a) that the plaintiff is a vexatious litigant and (b) that there is not a reasonable probability that he or she will prevail in the litigation against the moving defendant. Cal. Civ. Proc. Code § 391.1. Upon consideration of the motion, the court "shall consider any evidence, written or oral, by witnesses or affidavit, as may be material to the ground of the motion." Cal. Civ. Proc. Code § 391.2. If the court determines that the plaintiff is a vexatious litigant and that there is no reasonable probability that the plaintiff will prevail, the court shall order the plaintiff to furnish security in an amount to be fixed by the court. Cal. Civ. Proc. Code § 391.3. When security that has been ordered furnished is not furnished, the litigation shall be dismissed as to the defendant for whose benefit it was ordered furnished. Cal. Civ. Proc. Code § 391.4.

### 1. **Vexatious Litigant**

Defendants move to have plaintiff deemed a vexatious litigant under two provisions of California's Vexatious Litigants statute, California Code Civil Procedure §§ 391-391.7. First, they argue that plaintiff commenced or maintained 23 unsuccessful lawsuits in the past seven years, in violation of Section 391(b)(1), which defines a vexatious litigant as one who "[i]n the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five litigations other than in small claims court that have been ... finally determined adversely to the person...." Second, defendants argue that plaintiff should be deemed a vexatious litigant because, within his lawsuits, he filed numerous unmeritorious motions and papers, in violation of Section 391(b)(3), which defines a vexatious litigant as one who "[i]n any litigation while acting in propria persona, repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engaged in other tactics that are frivolous or solely intended to cause unnecessary delay."

Defendants have summarized 23 actions filed by plaintiff, each of which resulted in the termination of the case against plaintiff . McColm v. Westwood Park Ass'n, 62 Cal. App. 4th 1211, 1220-21 (1998) (California's vexatious litigant statute applies to appeals, and each appeal is considered "new litigation" within the meaning of the statute). Unlike federal law, which

considers evidence of misconduct, California law requires only that the plaintiff's actions have been "finally determined adversely" to him. In his opposition, which is oftentimes incoherent, plaintiff argues that these cases should not be considered because (a) his claims were legitimate (despite the findings by multiple judges that he failed to state a claim), (b) he is indigent, (c) "the Ninth Circuit Court of Appeals of California hates [him]," (d) the adversity he has faced is due to racial discrimination, (f) various individuals (presumably defendants in some of the identified cases) have attempted to murder him, and (g) he has been subjected to torture tactics, including waterboarding. None of these arguments has any merit. Since the cases identified by defendants meet the standard set forth under Section 391(b)(1), the court concludes that the defendants have met their burden of establishing that plaintiff qualifies as a vexatious litigant.

The court, however, finds that defendants have not met their burden of establishing that plaintiff qualifies as a vexatious litigant pursuant to Section 391(b)(3). Under that provision, what constitutes "repeatedly" or "unmeritorious" in any given case is left to the sound discretion of the trial court, and while broad, this discretion is not unfettered. Morton v. Wagner, 156 Cal. App. 4th 963, 971-72 (2007) (citation and quotation marks omitted). While there is no bright-line rule, most cases falling within the state statute involve dozens of motions during the pendency of an action or relating to the same judgment. Morton, 156 Cal. App. 4th at 972 (citation and quotation marks omitted). Examination of the docket in the each of the cases identified by defendants convinces the undersigned that plaintiff's filings do not qualify as vexatious. Unsuccessful motions are not necessarily unmeritorious or frivolous; "repeated motions must be so devoid of merit and be so frivolous that they can be described as a flagrant abuse of the system, have no reasonable probability of success, lack reasonable or probable cause or excuse and are clearly meant to abuse the processes of the courts and to harass the adverse party...." Id. at 972 (quoting Wolfgram v. Wells Fargo Bank, 53 Cal. App. 4th 43, 58 (1997)) (internal quotation marks omitted). Nonetheless, having concluded that plaintiff qualifies as a vexatious litigant pursuant to Section 391(b)(1), the court will proceed with the second step of the analysis.

    **2.**    **Success on the Merits**

In order to grant defendants' motion, the court must also find that plaintiff does not have a

1  reasonable probability of prevailing in this case. Cal. Civ. Proc. § 391.3. In making this
2  determination, the court is required to weigh the evidence, and it does not assume the truth of
3  plaintiff's allegations. Moran v. Murtaugh Miller Meyer & Nelson, LLP, 40 Cal. 4th 780, 784-86
4  (2007); Golin v. Allenby, 190 Cal. App. 4th 616, 635 (2010).

As noted, this action is proceeding on plaintiff's claims that defendants retaliated against him because of pending lawsuits against staff members at CSP-Sac and that this conduct resulted in interference with plaintiff's ability to meet court deadlines.

### a. First Amendment Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citation omitted); Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). To state a viable First Amendment retaliation claim, a prisoner must allege five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). Conduct protected by the First Amendment includes communications that are "part of the grievance process." Brodheim, 584 F.3d at 1271 n.4. A plaintiff must specifically identify the protected conduct at issue, name the defendant who took adverse action against him, and plead that the allegedly adverse action was taken "because of" plaintiff's protected conduct.

The Ninth Circuit has found that preserving institutional order, discipline and security are legitimate penological goals which, if they provide the motivation for an official act taken, will defeat a claim of retaliation. Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985) ("Challenges to restrictions of first amendment rights must be analyzed in terms of the legitimate policies and goals of the correctional institution in the preservation of internal order and discipline, maintenance of institutional security, and rehabilitation of prisoners."). Thus, the burden is on plaintiff to allege and demonstrate that legitimate correctional purposes did not motivate the actions by prison officials about which he

8

complains. See Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) (prisoner "must show that there were no legitimate correctional purposes motivating the actions he complains of."). District courts must "afford appropriate deference and flexibility" to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (citing Sandin v. Conner, 515 U.S. 472 (1995)).

Federal courts were not created to supervise correctional facilities, but to enforce the constitutional rights of all persons, including inmates. "We are not unmindful that prison officials must be accorded latitude in the administration of prison affairs, and that prisoners necessarily are subject to appropriate rules and regulations." Cruz v. Beto, 405 U.S. 319, 321 (1982). But prisoners, like other individuals, have the right to petition the government for redress of grievances, which includes the First Amendment right to file grievances against jail officials and to be free from retaliation for doing so. Brodheim, 584 F.3d at 1269. "Of fundamental import to prisoners are their First Amendment 'rights to file prison grievances....'" Rhodes v. Robinson, 408 F.3d at 567 (quoting Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003)). "[B]ecause purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." Rhodes v. Robinson, 408 F.3d at 567.

On the other hand, not every incident rises to the level of retaliation. In Rhodes v. Robinson, the Ninth Circuit cited a list of cases involving incidents that did rise to the level of retaliation:

> Gomez v. Vernon, 255 F.3d 1118, 1127 (9th Cir. 2001) (holding that "repeated threats of transfer because of [the plaintiff's] complaints about the administration of the [prison] library" were sufficient to ground a retaliation claim); Hines, 108 F.3d at 269 (holding that the retaliatory imposition of a ten-day period of confinement and loss of television — justified by a correctional officer's false allegation that the plaintiff breached prison regulations — violated the First Amendment); Pratt, 65 F.3d at 807 ("[I]t would be illegal for [corrections] officials to transfer and double-cell [plaintiff] solely in retaliation for his exercise of protected First Amendment rights."); Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989) (holding that, if correctional officers indeed called plaintiff a "snitch" in front of other prisoners

9

in retaliation for his filing grievances, it would violate the First
Amendment).

Rhodes v. Robinson, 408 F.3d at 568.

### i. Placement in MOHU

Defendants first argue that plaintiff's retaliation claim fails insofar as it is based on his placement in MOHU. They submit evidence that on May 26, 2009, plaintiff was placed in a Psychiatric Services Unit ("PSU"), which houses inmates with serious mental health issues who also required placement in a high-security facility.[5] Garcia-Plascencia Decl. ¶ 5; Henderson Decl. ¶ 4. In 2009, placement in the PSU was done by an Interdisciplinary Treatment Team ("IDTT") that included CSP-Sac staff members and medical and mental health professionals. Vance Decl. ¶ 5. Since neither defendant Henderson nor Roth was involved in the decision to house plaintiff in PSU, they could not have taken "adverse action" against plaintiff in this regard. Henderson Decl. ¶ 6, Roth Decl. ¶ 6. Similarly, while Captain Vance was part of the IDTT, he is not a medical or mental health professional, he did not assess plaintiff's mental health, and he did not have authority to place plaintiff in the PSU unless his mental health treatment providers determined it furthered his psychiatric treatment. Vance Decl. ¶¶ 5-6.

Plaintiff has not submitted any argument or evidence in opposition to defendants' motion regarding the likelihood of his success on the merits. The court acknowledges that, due to the procedural posture of this case (the instant motion is defendants' first response to the complaint), discovery has yet to commence, greatly limiting plaintiff's ability to submit documentary evidence. This does not, however, preclude him from identifying information that he expects to obtain during discovery nor does it prevent him from arguing that the legitimate correctional purposes asserted by the defendants in this motion did not motivate their actions. See Pratt, 65 F.3d at 808.

Moreover, other than plaintiff's unsupported allegation, there is nothing in the record indicating that any of the defendants' allegedly improper conduct was "because of" plaintiff's

---

[5] It is unclear from the record what difference there is, if any, between an inmate's placement in MOHU versus PSU.

10

pending lawsuits. The court thus concludes that plaintiff does not appear likely to succeed on this claim.

### ii. Strip Search

Plaintiff also claims that defendants retaliated against his protected activity by forcing him to undergo a strip search upon admission to MOHU. Pursuant to CDCR and CSP-Sac policy in 2009, inmates housed in PSU were required to undergo an unclothed body search upon admission. Henderson Decl. ¶ 12, Ex. A pt. 2 (ECF No. 20-5 at 3). Defendant Henderson may have strip searched plaintiff during the relevant time, but asserts that he would have done so pursuant to policy and not in retaliation for any protected conduct. Henderson Decl. ¶ 13. Neither Roth nor Vance strip-searched plaintiff at any point during the relevant period, and each claims that he did not order any custody staff to strip search plaintiff in retaliation for any protected conduct. Vance Decl. ¶ 7. Again, plaintiff submits no evidence or argument in opposition, and there is nothing in the record suggesting that the defendants' conduct was "because of" plaintiff's pending lawsuits. The court therefore reaches the same conclusion that plaintiff is not likely to succeed on his retaliation claim based on his being strip-searched.

### iii. Denial of Legal Property

Lastly, plaintiff's retaliation claim is premised on defendants' alleged denial of legal property while he was housed in MOHU.

In 2009, inmates housed in this unit received property pursuant to the Behavioral Incentive Program ("BIP"), which assigned steps to inmates correlating with certain privileges. Henderson Decl. ¶ 7. These steps ranged from Step 1A, at the lowest level, to Step 4. Id. Inmates entered the program at Step 1 and their step level increased based on active participation in the program and maintaining disciplinary-free behavior. Id. In all "steps" of the BIP, inmates housed in the PSU were able to request and receive legal property for active cases, although restrictions were in place if an inmate was on Step IA (inmates against whom disciplinary action was taken). Id. ¶ 8.

During the relevant period, defendant Henderson was the Property Officer in the PSU. Henderson Decl. ¶ 9. Henderson denies having ever denied plaintiff legal material to which he

11

1  was entitled under CDCR or CSP-Sac policy and further denies having been directed or instructed
2  to deny plaintiff such material. Id. ¶ 11. Furthermore, neither Roth nor Vance was responsible
3  for fulfilling requests for legal materials during this period and both deny instructing any official
4  to deny plaintiff legal materials to which he was entitled. Roth Decl. ¶ 8, Vance Decl. ¶ 8.
5  Lastly, neither Henderson nor Roth was aware that plaintiff had filed or was planning to file a
6  lawsuit against a Lt. O'Brian. Henderson Decl. ¶ 10, Roth Decl. ¶ 5.

7  Based on this undisputed evidence and the lack of any arguments to the contrary, the court
8  again finds plaintiff does not have a likelihood of success on the merits on his First Amendment
9  retaliation claim.

### b. First Amendment Right of Access to Courts

The First Amendment right to petition the government includes a right of access to the courts. See Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972). Prisoners have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817, 828 (1977). Prisoners also have a right "to litigate claims challenging their sentences or the conditions of their confinement to conclusion without active interference by prison officials." Silva v. Di Vittorio, 658 F.3d 1090, 1103 (9th Cir. 2011), abrogated on other grounds as recognized in Richey v. Dahne, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015). An inmate alleging a violation of this right must show that he suffered an actual injury. Lewis v. Casey, 518 U.S. 343, 349-51 (1996). That is, plaintiff must allege that the deprivation actually injured his litigation efforts, in that the defendant hindered his efforts to bring, or caused him to lose, an actionable claim challenging his criminal sentence or conditions of confinement. See id. at 351; Christopher v. Harbury, 536 U.S. 403, 412-15 (2002). The right is limited to the filing of direct criminal appeals, habeas petitions, and civil rights actions. Lewis, 518 U.S. at 354-55. Inmates do not have "an abstract, freestanding right to a law library or legal assistance," and "cannot establish relevant actual injury simply by establishing that [the] prison's law library or legal assistance program is subpar in some theoretical sense." Id. at 351. Because actual injury is a jurisdictional requirement that may not be waived, an actual injury must be alleged in order to state a claim for relief. Nevada Dept. of Corr. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011), cert. denied, 132 S. Ct. 1823 (2012); see,

12

1  e.g., Jenkins v. McMickens, 618 F. Supp. 1472, 1474-75 (S.D. N.Y. 1985) (complaint alleging
2  certain documents pertaining to pending trial confiscated and not returned too conclusory to
3  support claim of denial of access to court).
4      In the first amended complaint, plaintiff claims that defendants' conduct resulted in
5  plaintiff's inability to meet court deadlines in unidentified cases, resulting in the dismissal of two
6  of those actions. In their moving papers, defendants argue that plaintiff is not likely to succeed on
7  this claim because, contrary to his assertions, he was able to access the courts during the relevant
8  period; none of the cases that were open during the relevant period were subsequently dismissed
9  for plaintiff's alleged inability to access the court; and, lastly, plaintiff cannot demonstrate that he
10 had an actionable claim in any of the cases that were dismissed.
11     Defendants first argue that between May 26, 2009, and July 2009, plaintiff was able to
12 access the courts, as demonstrated by multiple filings in these cases:
13     1.    Benyamini v. Johnson, E.D. Cal. Case No. 1:07-cv-0907-LJO-DLB. On June 24,
14 2009, plaintiff filed a motion entitled "Motion to halt and to consent." (ECF No. 28.)
15     2.    Benyamini v. Simpson, E.D. Cal. Case No. 2:08-cv-1552-GEB-DAD. On June
16 12, 2009, plaintiff filed a "Motion to halt all proceedings and to back track dismissal."  (ECF No.
17 31.)  On June 16, 2009, plaintiff filed objections to pending findings and recommendations.  (ECF
18 No. 32.)
19     3.    Benyamini v. Manjuano, E.D. Cal. Case No. 1:06-cv-1096-AWI-GSA. On June 4,
20 2009, plaintiff filed a motion for extension of time to file an amended complaint and a motion to
21 appoint counsel. (ECF No. 54.)  On June 18, 2009, plaintiff filed a "Motion to halt all proceeds
22 and appoint counsel."  (ECF No. 56.)
23     4.    Benyamini v. Kretch, E.D. Cal. Case No. 2:09-cv-0170-GEB-DAD. On June 16,
24 2009, plaintiff filed three motions: (a) "Motion to halt case and 'Findings and
25 Recommendations'"  (ECF No. 13), (b) a request for copies (ECF No. 14), and (c) a motion to
26 halt all dockets, appoint counsel, and send copies of documents (ECF No. 15).
27     5.    Benyamini v. Sharp, E.D. Cal. Case No. 2:09-cv-0173-FCD-EFB. During the
28 relevant period, plaintiff submitted five motions and/or requests. On June 16, 2009, plaintiff filed

13

1   a request for copies (ECF No. 14) and a "motion to halt all dockets, for appointment of counsel
2   and library access" (ECF No. 15).  On June 30, 2009, plaintiff filed a motion to dismiss
3   defendants (ECF No. 16) and motion for court to return original documents filed (ECF No. 17).
4   On July 15, 2009, plaintiff filed a request for copies. (ECF No. 18.)

5         Defendants also argue that, of the actions that were dismissed after the relevant period,
6   none of the dismissals were related to plaintiff's alleged inability to access the courts.  Benyamini
7   v. Johnson, E.D. Cal. Case No. 1:07-cv-0907-LJO-DLB (judgment entered July 27, 2010, due to
8   plaintiff's failure to submit service documents by a May 2010 deadline); Benyamini v. Simpson,
9   E.D. Cal. Case No. 2:08-cv-1552-GEB-DAD (judgment entered July 8, 2009, on grant of
10  defendants' motion to dismiss; plaintiff filed objections during the relevant period (ECF No. 32));
11  Benyamini v. Manjuano, E.D. Cal. Case No. 1:06-cv-1096-AWI-GSA (judgment entered March
12  4, 2015, on grant of defendants' motion for summary judgment); Benyamini v. Kretch, E.D. Cal.
13  Case No. 2:09-cv-0170-GEB-DAD (judgment entered August 25, 2009, due to plaintiff's failure
14  to file an amended complaint; during the relevant period, plaintiff filed three motions, including a
15  motion for extension of time that was granted); Benyamini v. Sharp, E.D. Cal. Case No. 2:09-cv-
16  0173-FCD-EFB (judgment entered March 16, 2010, due to plaintiff's failure to file an amended
17  complaint or service documents by a January 2010 deadline).

18        Lastly, defendants argue that plaintiff cannot demonstrate that he was pursuing a non-
19  frivolous legal claim in those actions where his access to court was allegedly frustrated or
20  impeded.  Lewis, 518 U.S. at 351.  Though it is not entirely clear which actions were dismissed
21  due to plaintiff's alleged inability to access the courts, he states in the complaint that one involved
22  a "Lt. O'Brian."  Court records, however, reveal that plaintiff filed three actions involving a Lt.
23  O'Brian, all of which were filed *after* the relevant period.  See Benyamini v. Harris, E.D. Cal.
24  Case No. 2:09-cv-2462-MCE-DAD (filed September 2009); Benyamini v. Forsthy, E.D. Cal.
25  Case No. 2:09-cv-2323-GEB-DAD (filed August 2009); and Benyamini v. Forsythe, E.D. Cal.
26  Case No. 2:09-cv-2453-GEB-EFB (filed September 2009).  And in none of those cases was the
27  dismissal related to plaintiff's alleged inability to access the courts.  See supra.

28        In his opposition, plaintiff provides some clarity.  He contends that the two relevant

1  actions are Benyamini v. L. Johnson and Benyamini v. Harris. Without reference to case
2  numbers, the court presumes that he is referring to Benyamini v. Johnson, E.D. Cal. Case No.
3  1:07-cv-0907-LJO-DLB, and Benyamini v. Harris, E.D. Cal. Case No. 2:09-cv-2462-MCE-DAD.
4  But in Benyamini v. Johnson, the dismissal was for plaintiff's failure to submit service documents
5  by a May 2010 deadline (nearly one year after the relevant period), and as already noted, the
6  dismissal in Benyamini v. Harris was unrelated to plaintiff's alleged inability to access the courts.
7  Plaintiff cannot make conclusory declarations of injury, but instead must demonstrate that a non-
8  frivolous legal claim has been frustrated or impeded. Lewis, 518 U.S. at 351. The court thus
9  concludes that there does not exist a reasonable probability that plaintiff will succeed on his
10 access-to-court claim.

### 3. Amount of Security

12 Having concluded that plaintiff is not likely to succeed on his First Amendment retaliation
13 and access-to-court claims, the undersigned next turns to the question of security. Defendants ask
14 that plaintiff be required to furnish security in an amount between $11,900 (the amount
15 defendants expended to bring the instant motion) and $20,400 (the amount estimated to fully
16 litigate the instant motion). See Ehlenbach Decl. ¶¶ 3-4. Plaintiff did not respond to this
17 argument.

18 "'Security' means an undertaking to assure payment, to the party for whose benefit the
19 undertaking is required to be furnished, of the party's reasonable expenses, including attorney's
20 fees and not limited to taxable costs, incurred in or in connection with a litigation instituted,
21 caused to be instituted, or maintained or caused to be maintained by a vexatious litigant." Cal.
22 Civ. Proc. Code § 391(c). Defendants' characterization of $11,900 is supported by evidence, as a
23 conservative estimate of the amount expended to date. Moran, 40 Cal. 4th at 786; McColm, 62
24 Cal. App. 4th at 1218-19 ($1,000.00 security amount sought did not require evidentiary support);
25 Devereaux v. Latham & Watkins, 32 Cal. App. 4th 1571, 1587-88 (1995) (security sought in the
26 amount of $25,000.00 was supported by evidence); see also Singh v. Lipworth, 132 Cal. App. 4th
27 40, 45-48 (2005). Moreover, although plaintiff is proceeding in forma pauperis, that status is not
28 a barrier to an order to furnish security. Moran, 40 Cal. 4th at 786; McColm, 62 Cal. App. 4th at

1218-19; Devereaux, 32 Cal. App. 4th at 1587-88.  Accordingly, the court will recommend that plaintiff be ordered to furnish security in the amount of $11,900 before this action proceeds further.

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendants' July 27, 2015, motion for an order declaring plaintiff a vexatious litigant and requiring security (ECF No. 20) be granted;
2. Plaintiff be declared a vexatious litigant under the provisions of Title 3A, part 2, of the California Code of Civil Procedure, adopted by this Court pursuant to Local Rule 151(b); and
3. Plaintiff be required to furnish security in the amount of $11,900 before proceeding with this action.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within thirty (30) days after being served with a copy of these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten (10) days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

DATED: March 30, 2016

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

16